IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT
OF NEW YORK

---------------------------------------------x Docket #

PENELOPE MARTENS,

Plaintiff,

COMPLAINT

-against-

PLAINTIFF
DEMANDS .
TRIAL BY
JURY

SOUTHERN WESTCHESTER BOCES and
THE BOARD OF EDUCATION OF SOUTHERN
WESTCHESTER BOCES

Defendants.
---------------------------------------------x

## **NATURE OF THE ACTION**

This is an action under Title I and Title V of the Americans With Disabilities Act of 1990, 42 U.S.C. 12101 et seq., Sections 501 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. 791 et seq., Title VII of the Civil Rights Act of 1964, Section 102 of the Civil Rights Act of 1991, and the New York State Human Rights Law, N.Y. Executive Law 296 to correct unlawful employment practices on the basis of disability and to make whole PENELOPE MARTENS.  Defendants, SOUTHERN WESTCHESTER BOCES THE BOARD OF EDUCATION OF SOUTHERN WESTCHESTER BOCES  discriminated against PENELOPE MARTENS, a qualified individual with a disability, to wit:

deafness with associated speech impediment, because of her disability by subjecting her to disparate treatment and a hostile work environment and by condoning, sanctioning, supporting and failing to correct discriminatory conduct against her by one or more of her co-employees.

## JURISDICTION AND VENUE

1.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 452, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Title I of the Americans With Disabilities Act of 1990 (hereinafter referred as "ADA"), 42 U.S.C. Section 12111 et seq., and Title V, Section 503 of the Americans With Disabilities Act of 1990 (hereinafter referred as "ADA"), 42 U.S.C. Section 12203, all of which incorporate by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (hereinafter referred as "Title VII"), 42 U.S.C. Section 2000e-5(f)(1) and (3), pursuant to Sections 501 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. 791 and 29 U.S.C. 794, and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. Section 1981a.  In addition, the Court's pendent jurisdiction is invoked with respect to plaintiff's claims under the New York State Human Rights Law, N.Y. Executive Law 296.

2.   Within 300 days of the occurrences herein complained of, plaintiff PENELOPE MARTENS filed an employment discrimination charge against the defendants with the United States Equal Employment Opportunity Commission pursuant to procedural

2

requirement of Title I of the Americans With Disabilities Act of 1990, 42 U.S.C. 12111, et seq.  Said charge was assigned Charge # 520-2996-01940.

3.    By Notice dated November 16, 2016, postmarked November 18, 2016 and received November 25, 2016 the United States Equal Employment Opportunity Commission granted plaintiff PENELOPE MARTENS a Notice of Right to Sue under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq.  A copy of said Notice is annexed hereto and made part hereof.

4.    The employment practices hereafter alleged to be unlawful were and are now being committed in the Eastern District of New York.

**PARTIES**

5.    Plaintiff, PENELOPE MARTENS, a resident of the State of Connecticut has, and/or is perceived as having a disability known as Deafness with an associated speech impediment and is thus a "qualified individual with a disability."

6.    At all relevant times, Defendant SOUTHERN WESTCHESTER BOCES was a domestic corporation authorized to transact business in the County of Westchester, State of New York.

7.    At all relevant times, Defendant THE BOARD OF EDUCATION OF SOUTHERN WESTCHESTER BOCES was the governing body of SOUTHERN WESTCHESTER BOCES.

8.    At all relevant times, plaintiff was employed by the defendants as a Tutor/Deaf Interpreter for deaf and hard of hearing

3

students.

.

9.   At all relevant times, the Defendants, or one of them, has/have been recipients of federal funds and, as such is/are subject to the provisions of the Rehabilitation Act of 1973.

## STATEMENT OF CLAIMS

10.   More than thirty (30) days prior to the institution of this lawsuit and within 300 days of the occurrences herein complained of, PENELOPE MARTENS filed a Charge with the US EQUAL EMPLOYMENT OPPORTUNITY COMMISSION alleging violations of Title I of the ADA by Defendants. This action is commenced within 90 days of plaintiff's receipt of a Notice of Right to Sue under such Charge. All conditions precedent to the institution of this lawsuit have been fulfilled.

11.   During the period commencing September 8, 2015 and continuing to date, Defendants have engaged in unlawful employment and/or unlawful discriminatory practices as hereinafter described in violation of the Titles I and V of the ADA, Sections 501 and 504 of the Rehabilitation Act, the New York State Human Rights Law.

12.   Plaintiff has been employed by South Westchester BOCES (Respondent) since February 15, 1980 as a Tutor/Deaf Interpreter for deaf and hard of hearing students.

13.   As of her last performance evaluation which was for the 2014/2015 school year, Plaintiff has had excellent evaluations.

14.   At the commencement of the 2015/2016 school year on

or about September 8, 2015, Plaintiff was assigned to continue serving as a Tutor/Deaf Interpreter for 2 students, Alexa and Nick at the Center for career Services, 65 Grasslands Road, Valhalla, NY 10605. She would spend approximately half of each day with these students in the special services academic program and half the day with them in the occupational CTE program, (kitchen work for Alexa, auto shop work for Nick). This was consistent with her employment duties for approximately 30 years.

15. For the 2015/2016 school year Plaintiff was assigned to work with teacher Mrs. Sheldon with Ms. Lisa Schuchman, the Assistant Director for the Special Services Program as her supervisor.

16. From the outset, commencing on or about September 8, 2015 and continuing through June 30, 2016 Mrs. Sheldon exhibited a strong distaste for and resentment of Alexa's and Nick's utilization of the deaf interpreting services provided by Plaintiff.

17. On November 10, 2015, Plaintiff was called into a meeting with Lisa Schuchman which meeting was also attended by individuals Leslie Handler, Deborah (last name unknown), and S'dhari Cason-Payano. During the meeting, Lisa Schuchman informed Plaintiff that she would no longer work with her assigned students while they were in their CTE classes and that she would instead spend 100% of each work day in the Center for Special Services.

18. In response to Plaintiff's objection to this change

5

in her work assignment and her inquiry as to the reason for the change, Lisa Schuchman gave the following different explanations: (1) Plaintiff was no longer needed in the CTE program, (2) "Some safety concerns" were brought u about Plaintiff working with Alexa in the kitchen and with Nick in the auto shop, and (3) The program has been changed and Plaintiff is no longer needed in CTE.   When Plaintiff persisted in asking the reason for this change, Ms. Schuchman then stated: "I am not saying it is a safety issue; this was relayed to me.  I will talk to Dahila Jackson (CTE Director) to get clarification on the issue ."  (Such "clarification" was never provided.

19.   Plaintiff's duties were then changed as aforesaid and such change in duties continued through June 30, 2016.

20.   On January 19, 2016 Plaintiff continued to express concerns about the change in her job duties and continued requesting the promised clarification by written communication to union CSEA president Margaret Manion, with copies to Lisa Schuchman, CTE Director Dahila Jackson, and CAD principal Audrey Mangan.   In this communication, Plaintiff expressed that the conditions that purportedly gave rise to the alleged "safety concerns, (Plaintiff's deafness and heavy machinery in the area and deaf students) all had existed during Plaintiff's near 30 years in the CTE department.  Plaintiff requested a meeting to discuss these issues.  Plaintiff also requested that she be provided with an ASL Interpreter from an outside agency on the BOCES Human Resources

6

List as, due to privacy concerns, she did not want a BOCES co-worker to serve as an interpreter.

21.   On January 25, 2016, Plaintiff was advised by Margaret Manion, that "As per Lisa Schuchman, we are not hiring an outside (interpreter) agency for a meeting." As a result, the meeting never took place and the issues which were to be addressed at the meeting as requested by Plaintiff were never addressed.

22. Claimant asserts herein that from September 8, 2015 through June 30, 2016 she has been discriminated against on the basis of disability in that (1) she was denied reasonable accommodations in the form of an impartial (non BOCES employed) sign language interpreter by the respondent employer, (2) she was discriminated against and subjected to disparate treatment on the basis of disability when her job duties were changed to prevent her from working with her assigned students in the CTE program, (3) the discriminatory changes in Plaintiff's work responsibilities affected the learning of the deaf students, (4) as a result of the discriminatory practices and the respondent employer's refusal to provide the reasonable accommodation of an impartial sign language interpreter, Plaintiff was excluded from decisions being made about her and her role at BOCES, (5) that the "safety reasons" for the change in Plaintiff's job duties were a pretext for the discrimination and disparate treatment to which Plaintiff was being subjected discrimination, and (6) the deaf students to whom she was assigned and with whom she was associated, were being deprived of

her services as a result of the aforesaid discriminatory practices.

23.   On or about April 6, 2016, Plaintiff submitted a completed "Intake Questionnaire" to the U.S. Equal Employment Opportunity Commission (EEOC) wherein Plaintiff stated she had been discriminated against by the respondent employer as hereinbefore alleged.

24.   The EEOC, in accord with its practices, then notified respondent of the complaint that had been made by Plaintiff against respondent.

25.   Plaintiff was thereafter notified by letter dated April 21, 2016 from respondent's Interim Director of Human Resources, W. John Knight, that "The Board of Cooperative Education Services of Southern Westchester, at its meeting of April 20, 2016, acted to abolish your (Plaintiff's) position as a Sign Language Interpreter, effective June 30, 2016.

26.   Plaintiff alleges that the decision to abolish her job position was made in
 retaliation for the complaint Plaintiff had submitted to the EEOC on or about April 6, 2016

27.   Subsequently, on or about April 28, Plaintiff was given a letter dated April 15, 2016, from respondent's Interim Director of Human Resources, W. John Knight, informing Plaintiff that "The Board of Cooperative Education Services of Southern Westchester, at its meeting of April 20, 2016, will move to abolish your (Plaintiff's) position as a Sign Language Interpreter,

effective June 30, 2016. As a result of this delayed notice, Plaintiff alleges that this delayed notice which deprived Plaintiff of notice and an opportunity to be heard with regard to the abolition of her job position was delayed in retaliation for the complaint she had made to the EEOC.

28.    In addition to the aforesaid acts of discrimination, Plaintiff asserts that (1) she had been discriminated against by Ms. Schuchman's refusal to provide her with a non-staff member interpreter for BOCES meetings, (2) that she had been discriminated against and subjected to disparate treatment and adverse employment actions based on her disability in that she was a) estranged from her job classification as interpreter/tutor, b) segregated from other staff and students, and c) given restricted hours, reducing the time she was permitted to spend with the deaf students assigned to her.  She further asserts that respondent BOCES' teacher, Ms. Sheldon placed egregious restrictions on deaf people, including Plaintiff and her students, with respect to their forms of communication, and often interrupted the time during which Plaintiff was providing services to student Nick by giving him additional"free time" even as he had already played after lunch for 25 minutes.  She further asserts that Ms. Sheldon created a hostile work environment for herself and her deaf students, behaving as if she was a guard watching over Plaintiff and student Nick, distressing him.  Plaintiff further asserts that Ms. Sheldon had not accepted her and had acted to undermine her,

based on her disability, by going to her student, Nick, while he was in his auto shop class and telling him he did not need a deaf interpreter, he had a hearing interpreter and taunted him so that he would repeat three times that Copp, his hearing interpreter, was his interpreter. Plaintiff further asserts that Ms. Sheldon would object to the use by Plaintiff and deaf students of the closed captions on the televisions, claiming that the closed captions were annoying to hearing students and that Ms. Sheldon made threatening gestures towards Plaintiff such as sweeping her fist over Plaintiff;'s head in anger while apologizing to student Nick that the television's closed captioning "was not working" During a Discovery education film. Plaintiff asserts that such conduct by Ms. Sheldon was harassment on the basis of disability and retaliation for the complaint she had made to the EEOC.

29. On May 2, 2016, at 9:54 PM, Plaintiff sent a Grievance Letter via email to Ms. Audrey Mangan, Ms. Lisa Schuchman and Ms. Margaret Manion. In said letter, Plaintiff asserted grievances alleging disability discrimination based upon the factual occurrences set forth in paragraph 28 above.

30. Respondent BOCES did absolutely nothing with respect to Plaintiff's grievance letter of May 2, 2016 despite the fact that a) BOCES' Policy Manual contains a Non Discrimination Policy, Policy # 1440, which professes to prohibit discrimination in the basis of disability, as well as the fact that b) the BOCES Policy Manual contains a Anti-Harassment Policy, Policy #2420, which

prohibits harassment on the basis of disability and said Anti-Harassment policy provides that even in the absence of a formal or informal complaint, if SW BOCES has any knowledge of any occurrence of harassment, it will investigate such conduct promptly and throughly, as well as the fact that c) the BOCES Policy Manual contains a Equal Employment Opportunity Policy, Policy #5120, which provides for equal opportunities for employment, retention and advancement of all people regardless of disability and which provides that there shall be a grievance procedure that provides for the prompt and equitable resolution of complaints alleging discrimination.

  31. Respondent BOCES and the respondent Board of Education of the Board of Cooperative Education Services of Southern Westchester did absolutely nothing with respect to Plaintiff's grievance letter of May 2, 2016 despite the fact that respondent BOCES' Policy Manual, Policy #5170, provides for a Grievance Procedure so that all SWBOCES personnel shall have the opportunity to present their complaints or grievances free from interference, coercion, restraint, discrimination or reprisal. In this regard and upon information and belief, in violation of their own Grievance Procedure, Defendants failed to ensure compliance with Title IX of the Educational Amendments of 1972, Section 504 of the rehabilitation Act of 1973 and the Americans with Disabilities Act in that they failed to designate a SWBOCES employee as a Civil Rights Compliance Officer and failed to implement regulations and

procedures to resolve complaints of discrimination on the basis of disability.  Similarly, upon information and belief, Defendants failed to comply with their Grievance Procedure Policy in that they did not, prior to the beginning of each school year, issue an appropriate public announcement advising employees and others of SWBOCES' established grievance procedure for resolving complaints of discrimination based on sex or disability, which announcement was to include the name, address and phone number of the Civil Rights Compliance Officer

32.    Defendants BOCES and the respondent Board of Education of the Board of Cooperative Education Services of Southern Westchester terminated Plaintiff's employment by abolishing her job position in retaliation for her asserting her rights to be free from discrimination by making complaints to BOCES personnel about the discrimination she was subjected to and asking for meetings to address such discrimination and because she filed a complaint alleging disability discrimination with the EEOC, despite the fact that the Equal Employment Opportunity Policy, Policy # 5120 and the Grievance Procedure Policy, Policy # 5170 both prohibit such retaliation.

33.    Upon information and belief, Defendants' Policies and Procedures and Defendants' collective bargaining agreement with the CSEA require that Reductions in Force be effectuated in such a manner that those with greater seniority will retain their job positions over those with less seniority and that any such

reductions will be effectuated on a last in, first out basis.  Also upon information and belief, Defendants' abolition of Plaintiff's job position violated the aforesaid procedures and was effectuated in such a way to cause Plaintiff to be discharged while one or more individuals with lesser seniority were retained.  Plaintiff was thus subjected by Defendants to disparate treatment, retaliation, discrimination on the basis of disability, discrimination on the basis of age, and discrimination based on Plaintiff's association with her deaf students.

34.  Plaintiff was required to continue in service only until October 31, 2016 in order to maximize her pension benefit and Defendants effectuated Plaintiff's termination at a time when she required only a mere 4 months of additional service to maximize her benefits.

35  Plaintiff asserts that Defendants effectuated Plaintiff's early termination so as to subject her to a lifetime reduction in her pension benefit (a)  in order to discriminate against Plaintiff on the basis of her disability, (b) in order to retaliate against Plaintiff for her assertion of her rights and the rights of the disabled students she was associated with, to be free from discrimination in the basis of disability by making the aforesaid Plaintiffs and ( c) in order to subject Plaintiff to disparate treatment.

36.  Plaintiff was compelled to retain counsel to file a Notice of Claim against the Defendants and to file an Article 78

proceeding against the Defendants in state court.

37.   One day after the filing of the aforesaid Article 78 proceeding, Defendant undertook to reinstate plaintiff's position and restore her to her employment.

38.   Plaintiff was caused to incur substantial attorneys fees in order to regain her employment.

39.   The humiliating experiences and discriminatory treatment to which plaintiff was subjected by defendants caused her continuing emotional trauma and distress.

## AS AND FOR A FIRST CAUSE OF ACTION

40.   Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs of the complaint with the same force and effect as if more fully set forth at length herein.

41.   The foregoing conduct and practices by the defendants constitute unlawful harassment and discriminatory conduct and unlawful employment practices on the part of the defendants in violation of Titles I and V of the ADA.

42. The effects of the practices complained of above has been to deprive plaintiff PENELOPE MARTENS of equal employment opportunities, to subject her to harassment and a hostile work environment and to discriminatory and disparate treatment setting her apart from her co-workers because of her disability.

43.   The unlawful employment practices complained of above were and are intentional and discriminatory.

14

44.   Plaintiff has thereby been caused to suffer severe physical and emotional distress, and has been permanently damaged and scarred emotionally by the discriminatory treatment to which she was subjected.

45.   Plaintiff has thereby been damaged in the sum of Five Million Dollars and is further entitled to punitive damages in the sum of Three Million Dollars, together with costs, disbursements and attorneys fees.

## AS AND FOR A SECOND CAUSE OF ACTION

46.   Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs of the complaint with the same force and effect as if more fully set forth at length herein.

47.   The foregoing conduct and practices by the defendants constitute unlawful harassment and discriminatory conduct and unlawful employment practices on the part of the defendants in violation of Sections 501 and 504 of the Rehabilitation Act.

48. The effects of the practices complained of above has been to deprive plaintiff PENELOPE MARTENS of equal employment opportunities, to subject her to harassment and a hostile work environment and to discriminatory and disparate treatment setting her apart from her co-workers because of her disability.

49.   The unlawful employment practices complained of above were and are intentional and discriminatory.

50.   Plaintiff has thereby been caused to suffer severe physical and emotional distress and has been permanently damaged and scarred emotionally by the discriminatory treatment to which she was subjected.

51.   Plaintiff has thereby been damaged in the sum of Five Million Dollars and is further entitled to punitive damages in the sum of Three Million Dollars, together with costs, disbursements and attorneys fees.

## AS AND FOR A THIRD CAUSE OF ACTION

52.   Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs of the complaint with the same force and effect as if more fully set forth at length herein.

53.   The foregoing conduct and practices by the defendants constitute unlawful harassment and discriminatory conduct and unlawful employment practices on the part of the defendants in violation of the New York State Human Rights Law.

54. The effects of the practices complained of above has been to deprive plaintiff PENELOPE MARTENS of equal employment opportunities, to subject her to harassment and a hostile work environment and to discriminatory and disparate treatment setting her apart from her co-workers because of her disability.

55.   The unlawful employment practices complained of above were and are intentional and discriminatory.

56.   Plaintiff has thereby been caused to suffer severe

physical and emotional distress and has been permanently damaged and scarred emotionally by the discriminatory treatment to which she was subjected.

57.   Plaintiff has thereby been damaged in the sum of Five Million Dollars and is further entitled to punitive damages in the sum of Three Million Dollars, together with costs, disbursements and attorneys fees.

## AS AND FOR A FOURTH CAUSE OF ACTION

58.   Plaintiff repeats and reiterates each and every allegation contained in the prerceding paragraphs of the complaint with the same force and effect as if more fully set forth at length herein.

59. The foregoing conduct and practices by the defendants constitute unlawful harassment and discriminatory conduct and unlawful employment practices on the part of the defendants in violation of Titles I and V of the ADA, Sections 501 and 504 of the Rehabilitation Act of 1973, the New York State Human Rights Law.

60. The effects of the practices complained of above has been to deprive plaintiff PENELOPE MARTENS of equal employment opportunities, to subject her to harassment and a hostile work environment and to discriminatory and disparate treatment setting her apart from her co-workers because of her disability.

61.   The unlawful employment practices complained of above were and are intentional and discriminatory.

17

62.   The unlawful employment practices complained of have taken place and are taking place within the Southern District of New York.

63.   To the extent that plaintiff is entitled to and/or seeks injunctive relief herein, plaintiff alleges that she has no adequate remedy at law.

64.   Plaintiff is thereby entitled to and seeks injunctive relief enjoining the defendants from engaging in the discriminatory practices herein complained of, together with costs, disbursements and attorneys fees.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court make and enter a Judgment:

A.   Granting plaintiff compensatory damages in the sum of Five Million Dollars and punitive damages in the sum of Three Million Dollars on each of the first through third causes of action, together with costs, disbursements and attorneys fees.

B.   Granting plaintiff a permanent injunction on the fourth cause of action enjoining the FedEx Defendants, their agents, servants, officers, management personnel, employees, successors and assigns from engaging in any employment practice which discriminate on the basis of disability.

C.   Ordering the Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities to qualified individuals with disabilities, and which

eradicate the effects of defendants' past and present unlawful and/or discriminatory employment practices;

D.   Ordering the Defendants to make whole plaintiff PENELOPE MARTENS by returning her to all responsibilities and duties required and permitted of other Tutor/Interpreters employed by defendants and compensating her with appropriate lost earnings and employee benefits which he has lost as a result of defendants' conduct herein complained of with pre-judgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of defendants' unlawful and/or discriminatory employment practices.

E.   Ordering the Defendants to make whole plaintiff PENELOPE MARTENS by providing her with compensation for non-pecuniary losses, including emotional pain, suffering, inconvenience and mental anguish in amounts to be proven at trial;

F.   Awarding plaintiff the reasonable attorneys fees and disbursements incurred by her in protecting her rights under the law and in prosecuting this action.

G.   Granting plaintiff such further relief as the Court deems necessary and proper.

JURY TRIAL DEMANDED

Plaintiff requests a jury trial on all issues triable by

jury herein.

Dated:   Syosset, NY
         February 21, 2017

                                   Yours, etc.

                                          /S/

                                   RALPH G. REISER, ESQ. (RR 6700)
                                   Attorney for Plaintiff
                                   3 Walnut Drive
                                   P.O. Box 171
                                   Syosset, NY  11791
                                   (516) 496-9745
                                   (516) 496-9754 (FAX/TDD)
                                   REISERLAW@AOL.COM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK          Docket No.

PENELOPE MARTENS,

                                        Plaintiff,


        against


SOUTHERN WESTCHESTER BOCES and THE BOARD
OF EDUCATION OF SOUTHERN WESTCHESTER BOCES


                                        Defendants.



                        COMPLAINT



                **RALPH G. REISER, ESQ. (rr6700)**
                    **Attorney for Plaintiff**
                    **Office and P.O. Address**
                    **3 Walnut Drive**
                    **P.O. Box 171**
                    **Syosset, N.Y. 11791**
                    **(516) 496-9745**
                    **(516) 496-9754 Fax**
                    REISERLAW@AOL.COM